UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JOSE MARCUS PERRUSQUIA, | ) |
| Plaintiff, | ) |
| v. | ) No. 3:22–CV–309 |
| TENNESSEE VALLEY AUTHORITY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Tennessee Valley Authority's ("Defendant") Motion for Summary Judgment [Doc. 17] and Plaintiff Jose Perrusquia's ("Plaintiff") Cross-Motion for Summary Judgment [Doc. 20]. For the reasons stated below, Defendant's Motion is **DENIED** and Plaintiff's Cross-Motion is **GRANTED**.

### I.  BACKGROUND

The pertinent facts in this action are largely undisputed. Defendant is a "constitutionally authorized executive branch corporate agency and instrumentality of the United States" created by the Tennessee Valley Authority Act of 1933. [Doc. 18, at 1]. Defendant maintains and operates the largest public power system in the United States. [*Id.* at 1]. The U.S. Office of Personnel Management ("OPM") usually maintains electronic personnel files of federal employees and serves as the federal government's chief human resources agency. [*Id.* at 2]. However, Defendant is a federal agency exempt from OPM's recordkeeping authority. [*Id.* at 3]. Plaintiff is a journalist who resides in Tennessee. [Doc. 21, at 3].

In January 2022, Plaintiff submitted a Freedom of Information Act ("FOIA") request to Defendant seeking records related to the salary and compensation of four Regional Vice Presidents

1

employed by Defendant from December 1, 2020, to January 31, 2022: Carol Eimers, Justin Maierhofer, Jared Mitchem, and Mark Yates (collectively, the "Regional Vice Presidents"). [Doc. 18, at 3; Doc. 19, at 2]. Plaintiff identified himself as a journalist within his request, and specifically stated he was a member of the "News Media" for FOIA's fee-categorization purposes. [Doc. 18, at 4]. On March 1, 2022, Defendant's FOIA Officer, Denise Smith, denied Plaintiff's FOIA request on the grounds that the records were exempt from disclosure under FOIA Exemptions 5 and 6. [*Id.*].[1] Ms. Smith explained in a letter to Plaintiff that Exemption 6 "protects information that would constitute an unwarranted invasion of personal privacy," and informed Plaintiff that "[o]ther than a statement that 'this information is vital to the public.' your request provided no information on how the public interest would be served by the release of the information[.]" [Doc. 1-6, at 2].

> Plaintiff appealed the denial, asserting that:
>
> The information I request is vital to the public interest for a number of reasons. First and foremost, democracy rests on freedom of information. If the taxpaying public cannot examine how its government is spending public funds, that is not conducive to a free and fully functioning democracy. This is just fundamental. This is the sort of denial of information one might find in Russia. As an issue, the people of Memphis and West Tennessee have a right to know how much [Defendant] is investing in salaries of people put in place to serve them. This is especially true for a recently created position such as regional vice president, that didn't previously exist and was created following the decision by officials in Memphis to explore other power suppliers. It is argued that these other power suppliers could save ratepayers hundreds of millions of dollars a year. It is the intent of the regional vice president to retain Memphis['s] business. So, this is a pocketbook issue of great importance to a city like Memphis that struggles with a high poverty rate.

[Doc. 1-7, at 2].

---

[1] In this denial, Ms. Smith told Plaintiff that FOIA Exemption 5 also "allows the government to withhold, among other things, confidential business information of the release of such information would harm the government's commercial or financial interests or prevent an agency from performing its mission." [Doc. 1-6, at 2]. For purposes of this action, Defendant has withdrawn its reliance on Exemption 5. [Doc. 19, at 2]. Accordingly, the Court will proceed solely with respect to Exemption 6.

2

Defendant subsequently denied Plaintiff's request for administrative appeal, reaffirming its original denial and reiterating that "[Defendant] must balance the privacy interests of its employees against any public interest in the requested information." [Doc. 1-8 at 2; Doc. 18, at 5]. In response to Plaintiff's appeal, Vice President of Communications and Public Relations for Defendant, Buddy Eller, stated as follows:

> In this case, you have asserted that the public has an interest in knowing the salaries of the individuals that [Defendant] has hired to serve the public. You have stated this in the context of the relationship between [Defendant] and Memphis, specifically [Defendant's] providing power to Memphis Light, Gas and Water ("MLGW"). Any relationship between the salaries of the four individuals, three of whom are not involved at all with Memphis or MLGW, to the public interest you've identified is tenuous at best, and it is difficult to see how someone's salary, which bears no relation to [Defendant's] policies, would aid in this interest. Therefore, I find that there is no justification for intruding on the privacy interest of the employees whose salaries you have requested.

[Doc. 1-8, at 3]. Plaintiff filed suit on September 7, 2022, alleging violation of FOIA by Defendant for wrongful withholding of agency records. [Doc. 1, at 3–5]. The parties have both fully briefed motions for summary judgment [Docs. 17, 20] and this matter is now ripe for review.

## II.     LEGAL STANDARD

Most challenges to an agency's use of a FOIA exemption involve purely legal questions, and therefore district courts typically resolve these cases on summary judgment. *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 544 (6th Cir. 2001). A district court reviews the government's assertion of exemptions and decision to withhold documents *de novo*. 5 U.S.C. § 552(a)(4)(B). FOIA requires agencies of the government to release records to the public upon request, unless one of nine statutory exemptions applies. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975). "To prevail on summary judgment, the government must show that it made a 'good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information' and that any withholding of materials was authorized within a statutory

3

exemption." *Rimmer v. Holder*, 700 F.3d 246, 255 (6th Cir. 2012) (quoting *CareToLive v. FDA*, 631 F.3d 336, 340 (6th Cir. 2011)).

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Celotex*, 477 U.S. at 325. Once the movant has discharged this burden, the nonmoving party can no longer rest on the allegations in the pleadings and must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).

In the context of FOIA specifically, the agency bears the burden of establishing that the claimed exemption applies. *See* 5 U.S.C. § 552(a)(4)(B); *see also Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003). Once the agency meets its burden, a plaintiff must show that the agency "(1) improperly (2) withheld (3) agency records" in order to prevail. *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989) (quoting *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980)); *see also* 5 U.S.C. § 552(a)(4)(B). Additionally, the resolution of an exemption's applicability at the summary-judgment phase in FOIA litigation "creates a situation in which a plaintiff must argue that the agency's withholdings

4

exceed the scope of the statute, although only the agency is in a position to know whether it has complied with the FOIA [request.]" *Rugiero*, 257 F.3d at 544. "Ordinarily, an agency will offer detailed affidavits, rather than the requested documents themselves, to justify its decision to withhold information, and these affidavits are entitled to a presumption of good faith absent evidence to the contrary." *Rimmer*, 700 F.3d at 255 (citing *Jones v. FBI*, 41 F.3d 238, 242–43 (6th Cir. 1994)). "If bad faith on the part of the agency is shown, however, a district court may conduct an *in camera* review of any documents withheld or redacted." *Id.*; 5 U.S.C. § 552(a)(4)(B).

### III. ANALYSIS

As an initial matter, Plaintiff does not argue that Defendant has not made a good-faith search for records pertaining to his request or that Defendant's declarations submitted in support of withholding the requested documents were not made in good faith. *See Rimmer*, 700 F.3d at 255. Therefore, because Plaintiff has not disputed Defendant's good-faith efforts, the only question before the Court is whether Defendant properly applied Exemption 6 in order to withhold requested documents from Plaintiff.

FOIA was enacted "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted). "Only if one of the enumerated FOIA exemptions applies may an agency withhold requested records . . . and even then, the exemptions are to be narrowly construed[.] This reflects FOIA's 'general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.'" *Rimmer*, 700 F.3d at 255 (citations omitted). FOIA has a "strong presumption in favor of disclosure." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).

Exemption 6 states that FOIA does not apply to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

5

5 U.S.C. § 552(b)(6). To determine whether Exemption 6 applies, the Sixth Circuit has outlined a two-part inquiry: "1) does the file contain personnel, medical or 'similar' data; and 2) if so, would disclosure be a 'clearly unwarranted invasion of personal privacy.'" *Schell v. U.S. Dep't of Health & Human Servs.*, 843 F.2d 933, 937 (6th Cir. 1988) (citations omitted). Plaintiff does not dispute that the records at issue are "similar files" within the meaning of Exemption 6, so the Court must only determine whether disclosure would be a "clearly unwarranted" invasion of personal privacy. [Doc. 22, at 6 n.2; Doc. 24, at 2]. "This requires a balancing of interests 'between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information.' In striking this balance, this court looks to two factors: the privacy interest at stake and the public interest in disclosure." *Schell*, 843 F.2d at 938 (citations omitted). The FOIA Improvement Act of 2016 ("FIA") authorizes Defendant to withhold the information Plaintiff has requested only if Defendant "reasonably foresees that disclosure would harm an interest protected by" FOIA Exemption 6. 5 U.S.C. § 552(a)(8)(A)(i)(I).

  **A. There is a substantial, but not strong, privacy interest at stake.**

A substantial privacy interest is "anything greater than a *de minimis* privacy interest." *Ctr. for Med. Progress v. U.S. Dep't of Health and Human Servs.*, No. 21-642, 2022 U.S. Dist. LEXIS 159508, at *40 (D.D.C. Sept. 3, 2022) (citation omitted). "A substantial privacy interest exists in avoiding embarrassment, retaliation, or harassment and intense scrutiny by the media that would likely follow disclosure." *Judicial Watch, Inc. v. U.S. Dep't of State*, 875 F. Supp. 2d 37, 46 (D.D.C. 2012) (citing *U.S. Dep't of State v. Ray*, 502 U.S. 164, 176 n.12 (1991)).

Mr. Eller and the Regional Vice Presidents all submitted declarations stating that they reasonably believe that public disclosure of information about the Regional Vice Presidents' salary and compensation either "could potentially expose [them] to undue harassment or to the risk of

harm" or "is capable of causing" embarrassment and harm. [Doc. 17-1, at 5; Doc. 17-2, at 2; Doc. 17-3, at 2; Doc. 17-4, at 2; Doc. 17-5, at 2]. However, none of the declarations state that embarrassment or harassment is likely. Although Defendant is not subject to OPM regulations, Defendant is an executive agency of the federal government, which means that their employees are distinguishable from citizens employed by private companies. *See, e.g., News Grp. Bos., Inc. v. Nat'l R.R. Passenger Corp.*, 799 F. Supp. 1264 (D. Mass. 1992) (finding, *inter alia*, that the salary information of Amtrak employees was subject to disclosure because although Amtrak is not a federal agency, its operation is governed by statute and it is subject to the provisions of FOIA).

Further, it appears that purported salary information for thousands of Defendant's employees, including salary information for managers and other vice presidents, has been made publicly available in the past. [Doc. 23, at 4–8].[2] The Court does not have any information related to harassment or embarrassment caused by these previous disclosures that suggests issues would be likely to occur for the Regional Vice Presidents were their compensation information to be disclosed. And while the Court agrees with Defendant that any private document subsequently made public is, by technical definition, an "invasion of privacy," this idea must be viewed contextually. Allowed to proceed unchecked, any entity subject to FOIA could take any

---

[2] Plaintiff, in his Statement of Material Facts, cites to different publications by the Knoxville News Sentinel and the Chattanooga Times Free Press between 2006 and 2018 that disclosed purported salary information for Defendant's employees, including managers and vice presidents such as Mr. Maierhofer. Defendant objects to these stated facts on the sole basis that they constitute inadmissible hearsay offered for the truth of the matter asserted. The Court does not find the publications to be hearsay, because the Court does not consider them for the truth of the salary information that the publications contain, and the Court can take judicial notice of the fact that the publications exist, as the fact of their existence is not subject to reasonable dispute. *See* Fed. R. Evid. 201. It does not matter to the Court whether the salaries reported are true, only that the existence of the publications tends to show that there is a history of purportedly disclosed salary information for Defendant's employees and, notably, Defendant has not provided to the Court any instances of any harassment or embarrassment resulting therefrom.

7

information out of the public sphere simply by declaring it private, rendering its subsequent disclosure an "invasion of privacy."

In light of the forgoing, the Court cannot find that a strong privacy interest exists with respect to the Regional Vice Presidents' salary and compensation information. However, the standard for determining whether a substantial privacy interest exists is "not very demanding." *Multi AG Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1230 (D.D.C. 2008). Since Defendant has been exempted from the OPM regulations that govern other federal employees, and in light of the declarations submitted with Defendant's Motion, the Court is "willing to engage in the balancing inquiry by concluding that disclosure of the information would constitute a 'more than minimal invasion[] of personal privacy.'" *Id.* For the reasons that follow, said balancing inquiry favors public disclosure.

### B. The public interest outweighs the Regional Vice Presidents' privacy interests, and disclosure is favored.

#### i. *Plaintiff has exhausted his administrative remedies.*

As an initial matter, Defendant attempts to overcome two of Plaintiff's arguments related to public interest by binding him solely to the statements he provided in his initial FOIA request and appeal, arguing that he "failed to specify how disclosure of the salary and compensation information would serve the core purpose of FOIA" and that for the Court to entertain any new arguments not outlined in the original FOIA appeal would "frustrate the policies underlying the exhaustion requirement" for administrative remedies. [Doc. 19, at 12; Doc. 24, at 10]. Specifically, Defendant takes issue with Plaintiff's arguments that: (1) the sought information would shed light on Defendant's compliance with the Equal Pay Act and Title VII of the Civil Rights Act of 1964, and (2) the sought information "would shed light on how TVA chooses to allocate its resources—a matter of significant public interest." [Doc. 24, at 9].

Courts in the Sixth Circuit have found the exhaustion requirement to be jurisdictional in FOIA actions. *See Ruza v. Consumer Fin. Prot. Bureau*, No. 1:20-cv-1113, 2021 U.S. Dist. LEXIS 69993, at *5 (W.D. Mich. Mar. 18, 2021) (collecting cases); *Tex. Roadhouse v. EEOC*, No. 3:14CV-652-JHM, 2015 U.S Dist. LEXIS 25468, at *10–*11 (W.D. Ky. Mar. 3, 2015) (collecting cases). However, in the case cited by Defendant, *Hidalgo v. FBI*, the D.C. Circuit Court of Appeals found that the plaintiff had not exhausted administrative remedies when he filed an appeal of the FBI's FOIA decision *before* the FBI had actually responded to his FOIA request. 344 F.3d 1256, 1257, 1260 (D.C. Cir. 2003). Similarly, the Sixth Circuit found that plaintiffs failed to exhaust administrative remedies where they "failed to . . . request[] specific information in accordance with published administrative procedures and hav[e] their request improperly refused before they brought their district court action." *Reisman v. Bullard*, 14 Fed. App'x 377, 378 (6th Cir. 2001). These cases are not helpful to the Court in determining whether new lines of reasoning offered to support the public interests impacted by a denied FOIA request, when raised for the first time in litigation, are barred by the plaintiff's failure to exhaust them before an agency when all other administrative procedures were followed.

"Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefits of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975). With respect to Plaintiff's Equal Pay Act and Title VII arguments, the Court acknowledges that they appear to be raised for the first time in the course of litigation. However, Plaintiff's appeal of Defendant's FOIA decision explicitly states that "[i]f the taxpaying public cannot examine how its government is spending public funds, that is not

9

conducive to a free and fully functioning democracy." [Doc. 1-7, at 2]. Defendant was therefore on notice that allocation and spending of funds within its operations formed a basis of Plaintiff's request. The Court need not find whether the Equal Pay Act and Title VII arguments made by Plaintiff in briefing are barred by failure to exhaust, because they are not needed to resolve the present inquiry of whether Exemption 6 applies to the salary information of the Regional Vice Presidents. However, the grounds raised by Plaintiff in his appeal, which can reasonably be construed to include concerns related to the allocation and spending of Defendant's funds, will be discussed further below.

        ii.      <u>Public interest favors disclosure.</u>

The "only relevant 'public interest in disclosure' to be weighed . . . is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding of the operations or activities of the government.'" *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 775 (1989) (original emphasis omitted). The Supreme Court has reiterated that:

> [FOIA's] basic policy of 'full agency disclosure unless information is exempted under clearly delineated statutory language' indeed focuses on the citizens' right to be informed about what their government is up to. Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose. That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct.

*Id.* at 495–96 (citations omitted).

As stated above, for Exemption 6 to apply, the alleged invasion of privacy caused by potential disclosure must be "clearly unwarranted," and the disclosure of the information sought "would," not could, constitute an invasion of privacy. *See* 5 U.S.C. § 552(b)(6). Determining what

10

is "clearly unwarranted" requires a "balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information." *Lepelletier v. Fed. Deposit Ins. Corp.*, 164 F.3d 37, 46 (D.C. Cir. 1999) (citation omitted).

The Court finds that any invasion of the privacy interests at issue, through disclosure of the Regional Vice Presidents' salary information, would not be clearly unwarranted. Plaintiff has proffered a legitimate reason related to his right to governmental information in requesting the documents at issue. He argued in his appeal that "democracy rests on freedom of information," which he considers "vital to the public." [Doc. 1-7, at 2]. He states that the ability of taxpayers to see how agency funding is spent is fundamental to democracy. [*Id.*]. He then elaborates that the information he seeks is more specifically relevant to the public in West Tennessee because of the implications the Regional Vice President position has for the city of Memphis's determination to remain with Defendant as an energy supplier or choose another utility provider in the alternative. [*Id.*].

While Defendant "self-funds its operations from revenues and receives no tax dollars," [Doc. 1-8, at 2], Defendant is effectively owned by the federal government, and it is not insulated from public interest or oversight into its spending. Defendant is by its own admission a corporate agency of the federal government and maintains and operates the nation's largest public power system. [Doc. 18, at 1]. Defendant provides power to 153 local power companies, including the Memphis Light, Gas and Water Board, which then distribute that power to retail customers. [Doc. 18, at 2, 7]. Said retail customers, the public, have an interest in information related to the reliability and affordability of their public utilities. One need look no further than the large-scale health and safety issues caused when public utilities fail their customers to understand why citizens have an

11

interest in the inner workings of public utility providers like Defendant and how their top decision-makers are compensated relative to spending in other areas.

Disclosure also would not expose the Regional Vice Presidents to unnecessary public scrutiny. FOIA is not so exacting as Defendant wishes the Court to be in evaluating Plaintiff's motivations for seeking the information at issue, particularly where there is a relatively weak privacy interest at stake. Plaintiff is admittedly a journalist who intends to report on Defendant and its activities, but the Supreme Court has stated that "whether an invasion of privacy is *warranted* cannot turn on the purposes for which the request for information is made. Because Congress clearly intended the FOIA to give any member of the public as much right to disclosure as one with a special interest [in a particular document], except in certain cases involving claims of privilege, the identity of the requesting party has no bearing on the merits of his or her FOIA request." *U.S. Dep't of Defense v. Fed. Labor Relations Auth.,* 510 U.S. 487, 496 (1994) (cleaned up) (emphasis in original).

Further, as discussed above, there is nothing in the record to suggest that any harassment or embarrassment is likely or would result from disclosure of the Regional Vice Presidents' salaries, particularly for Ms. Eimers, Mr. Mitchem, and Mr. Maierhofer. The Court also rejects Defendant's characterizations of Plaintiff's journalistic practices as a "campaign waged to expose the private affairs of [Defendant]'s Regional Vice President for the West Region, Mark Yates, to intense public scrutiny." [Doc. 24, at 6]. Mr. Yates is the Regional Vice President for the region encompassing Memphis, Tennessee, where Plaintiff works as a journalist. Plaintiff sought salary information with respect to Mr. Yates's position specifically due to the circumstances under which his position was created. Defendant complains about articles "scrutinizing" Mr. Yates and his wife's personal connections to a board member of Memphis Light, Gas and Water, calling the

12

information contained therein "extensive and unnecessary," and faults Plaintiff for sending "multiple emails to TVA employees asking about Mr. Yates and his wife." [Doc. 24, at 6]. However, Defendant provided the Court with two total emails to Defendant's employees related to the contents of Plaintiff's reporting, both sent to individuals either currently or previously employed with Defendant's public relations.[3] [*See* Docs. 24-4, 24-5]. Two requests by Plaintiff for comment or verification on his reporting, sent to different individuals involved with Defendant's public relations, hardly constitutes harassment. Defendant's attempts to frame common and necessary journalistic practices as harassment with an intent to embarrass the Regional Vice Presidents are unavailing.

Defendant's citation to *U.S. Department of Defense Department of Military Affairs v. Federal Labor Relations Authority*, 964 F.2d 26, 29 (D.C. Cir. 1992), is similarly unavailing. In that case, the D.C. Circuit Court of Appeals stated that "one factor agencies and courts consider on the public interest side of the equation is the extent to which there are alternative sources of information available that could serve the public interest in disclosure. Such inquiry proceeds on the logic that to the extent there are 'alternative means' available to obtain the information, the need for enforced disclosure under the FOIA of privacy-implicating information is diminished." *Id.* Defendant cites to their Integrated Resource Plan ("IRP"), which mandates least-cost planning,

---

[3] The Court may take judicial notice of "public records and government documents available from reliable sources on the Internet." *See Mitchell v. TVA*, No. 3:14-cv-360, 2015 U.S. Dist. LEXIS 56527, at *9 n.2 (E.D. Tenn. Apr. 30, 2015) (citation omitted) (taking judicial notice of TVA's website). Scott Brooks is listed as a member of TVA's public relations staff. *Public Relations*, Tennessee Valley Authority, *available at* https://www.tva.com/newsroom/public-relations (last accessed September 23, 2023). Latrivia Welch has served as a public relations contact for Defendant based in Memphis. *TVA Support in Memphis Exceeds $40 million in 2020*, Tennessee Valley Authority (Nov. 25, 2020), *available at* https://www.tva.com/newsroom/press-releases/tva-support-in-memphis-exceeds-40-million-in-2020.

13

as an alternative that "'serves the public interest in disclosure' asserted by Plaintiff." [Doc. 24, at 13].

But Defendant itself seem to concede that the IRP, which "evaluates the merits of using different kinds of energy resources to meet forecasted future demand for electricity with the goal of meeting demand reliably and cost effectively," is not an alternative to the information sought by Plaintiff. [Doc. 24, at 13 (citation omitted)]. Defendant argues that Defendant's "employee compensation decisions are not as whimsical as Plaintiff imagines and do not involve the false choice that every dollar spent on the salaries of the regional vice presidents necessarily is one dollar not spent on infrastructure investment." [Doc. 24, at 12]. Therefore, by Defendant's own admission, information contained in the IRP related to spending for energy cost and demand is likely not an alternative to the salary information Plaintiff seeks.

In sum, FOIA contains a general philosophy of full agency disclosure unless information is exempted, and exemption is not warranted here. Accordingly, for the reasons stated herein, Defendant's Motion for Summary Judgment is **DENIED** and Plaintiff's Cross-Motion for Summary Judgment is **GRANTED**.

Defendant is hereby **ORDERED** to disclose the salary and compensation information for each of the four Regional Vice President positions. As it is the salary and compensation information that is relevant to Plaintiff's claims of oversight, Defendant will be permitted to redact any payroll codes, employee identification numbers, employee names and addresses, or other similar identifying information from the provided documents, since this is private information that reveals little about Defendant's conduct as a corporate agency of the federal government. However, Defendant must publish the specific job titles corresponding to each salary. "While it may be possible to determine individual employees from their job titles alone, eliminating the job

14

title information would render the wages listed almost useless, as Plaintiff would not know for what type of work the person is being compensated." *News Grp. Bos., Inc.*, 799 F. Supp. at 1272.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment [Doc. 17] is **DENIED** and Plaintiff's Cross-Motion for Summary Judgment [Doc. 20] is **GRANTED**. An appropriate judgment will enter.

So ordered.

ENTER:

s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE